Walk v. Russell

*F. Lee Shipman*, for plaintiffs.
*George F. Douglas, Jr.*, for defendant.

SHEELY, *J.*, April 30, 1979—Defendant has filed preliminary objections to the complaint of plaintiffs in the form of a motion to strike. The complaint avers that on Monday, January 19, 1976, at approximately 2:45 p.m., defendant negligently failed to yield the right-of-way, drove her Volkswagen through a stop sign, and collided with plaintiffs' vehicle.

In count I, concerning plaintiff Jack Walk, the complaint alleges serious and permanent injuries resulting in pain and suffering, medical bills in the amount of $502.90 with an expectation that such expenses will exceed $750, that plaintiff Jack Walk, due to the injuries from the accident, was prevented from performing all or substantially all of his daily activities which continued for more than 60 consecutive days, and an expectation that earning potential may be diminished in excess of $15,000. Count II, concerning plaintiff Lynette Walk, alleges loss of services, companionship and consortium of her husband, plaintiff Jack Walk.

Defendant's preliminary objections in the form of a motion to strike, deal with five portions of plaintiffs' complaint. Specifically, defendant contends (1) that the $750 threshold for the retention of tort liability under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, art. I, sec 301(a)(5)(B), 40 Pa.C.S.A. §1009.301(a)(5)(B), has not been met; (2) that plaintiff has failed to allege that the physical impairment which prevented plaintiff Jack Walk from

performing all or substantially all of the material acts and duties which constituted his usual and customary daily activities and which continued for more than 60 consecutive days is "medically determinable" in accordance with section 301(a)(5)(C) of the No-fault Act, 40 Pa.C.S.A. §1009.301(5)(C); (3) that plaintiffs' concise allegation that the injuries are "serious and permanent" is insufficient because plaintiffs have not alleged that they have medical testimony to substantiate the claim; (4) that the concise allegation that work loss may exceed the $15,000 threshold under the No-fault Act, secs. 202(b) and 301(a)(4), is insufficient absent allegation that plaintiffs have medical testimony to substantiate the claim; and (5) that the loss of consortium claim, if Jack Walk's claim is barred under the No-fault Act, being derivative, should also be stricken. We will deal with the objections in the order they have been raised.

Section 301(a) of the No-fault Act provides:

"Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:

. . .

"(5) A person remains liable for damages for non-economic detriment if the accident results in: (B) the reasonable value of reasonable and necessary medical and dental services, including prosthetic devices and necessary ambulance, hospital and professional nursing expenses incurred in the diagnosis, care and recovery of the victim, exclusive of diagnostic x-ray costs and rehabilitation costs in excess of one hundred dollars ($100) is in excess of seven hundred fifty dollars ($750)."

The complaint, in paragraph 10, alleges that Jack A. Walk sustained the following injuries: cerebral concussion, strain of the cervical thoracic lumbar spine with resultant neck, left arm and back pain, shock to the nerves and nervous system, "and other serious, permanent and painful injuries."

Plaintiffs' complaint alleges medical expenses of $502.90 at present. Paragraph 12 further states: "In addition, Plaintiff (Jack A. Walk) alleges that there is a reasonable basis to believe that there will be additional medical expenses in the future which, exclusive of diagnostic, x-ray and rehabilitation costs in excess of One Hundred ($100.00) Dollars, will be in excess of Seven Hundred and Fifty ($750.00) Dollars." Defendant contends that this allegation is insufficient to meet the above-quoted threshold because more than three years have passed between the accident and the filing of the complaint.

While one might initially register doubts concerning the ability of plaintiff to exceed the $750 threshold based on that which is before us, nevertheless, we do not consider such observation to be decisive of the issue at hand. The act makes no specific requirement that the $750 threshold be reached prior to filing suit and we do not so hold. "It is sufficient to allege with reasonable certainty that medical expenses will be in the threshold amount." O'Sullivan v. Ruszecki, 2 D. & C. 3d 276, 280 (1977).

The question is not whether the dollar limitation of the medical expense threshold has been exceeded at the time a suit is initiated. Instead, the proper inquiry is whether such expenses have been incurred or will be incurred in the future with reasonable certainty: Id. See also Markley v. Brown,

66 Lanc. 301 (1978). Plaintiffs' complaint, however, must "allege that [the threshold] has been met or facts to support a conclusion that additional medical expenses will be incurred which will carry the total over the required threshold." Diehl v. Smith, 92 York 193, 194 (1979). Therefore, we deem it necessary to require plaintiffs to amend their complaint to set forth *facts* which will establish to a reasonable certainty that the $750 threshold will be met. Cf. Theal v. Confer, 7 D. & C. 3d 614 (1978). Only in this way can it be determined whether or not plaintiffs rely on more than mere speculation.

Defendant's motion to strike paragraph 13 of the complaint because it does not allege that the physical impairment suffered by plaintiff Jack A. Walk is "medically determinable" under section 301(5)(C) of the act is well taken.

That section provides: "(5) A person remains liable for damages for non-economic detriment if the accident results in: . . . (C) *medically determinable* physical or mental impairment which prevents the victim from performing all or substantially all of the material acts and duties which constitute his usual and customary daily activities and which continues for more than sixty consecutive days." (Emphasis supplied.)

Accordingly, defendant's motion to strike will be granted as the paragraph fails to conform to the requirements of the act. See Theal v. Confer, supra. Leave to plead over will be granted.

We next turn to defendant's motion to strike directed at paragraphs 10 and 14 of the complaint. Paragraphs 10 and 14 respectively state:

"10. That as a result of the negligence of the Defendant, the Plaintiff (Jack A. Walk) has been caused to sustain serious, permanent and painful

injuries, to wit: Cerebral concussion, strain of the cervical thoracic lumbar spine with resultant neck, left arm and back pain, shock to his nerves and nervous system, and other serious, permanent and painful injuries.

"14. That as a result of the negligence of the Defendant, the Plaintiff (Jack A. Walk) incurred a serious and permanent injury."

It is defendant's contention that these allegations, presumably especially paragraph 14, should be stricken because there is no allegation plaintiffs have medical testimony to present to establish that one or more of the alleged injuries are serious and permanent. For this proposition she cites Theal v. Confer, supra; McCullough v. Strong, 92 York 142 (1978); and Bromiley v. Collins, 1 D. & C. 3d 94 (1977).

In Theal v. Confer, supra, plaintiff alleged a "permanent partial disability." President Judge Quigley, in holding this insufficient to meet the threshold requirement of section 301(a)(5)(A) of the act stated: "We believe that if the injury complained of is indeed serious, plaintiff should be required to at least state that conclusion and further state why he believes the injury is in fact serious." Id. at 620. No requirement was propounded by the court that plaintiff allege whether he had medical testimony to present to establish the seriousness and permanence of the alleged injury.

In McCullough v. Strong, supra, plaintiff alleged injuries in the nature of "a fractured right ankle, numerous bruises and contusions on the forehead, possible epidormal hematoma, and a contused knee." Id. at 142. In a separate paragraph plaintiff simply alleged the injuries were "of a serious and permanent nature." Id. In considering defendant's

preliminary objections to these allegations the court stated: "Taking into consideration the total complaint, we conclude that it does not support this conclusion. The medical expenses and loss of work are minimal, and a fractured ankle, bruises and contusions and possible epidormal hematoma are hardly, in the usual case, either serious or permanent injuries." Id: at 143. Relying on Bromiley v. Collins, supra, leave was thus granted plaintiffs to file an amended complaint "setting forth the nature of the injuries specifying as to which are serious and permanent, and how they are serious and permanent, and that the conclusion pleaded is based upon competent medical advice, which will be produced at trial."

In Bromiley v. Collins the complaint contained the following:

"18. As a result of this action, minor plaintiff, Theresa Bromiley, has suffered injuries which are serious and permanent, including but not limited to contusions of the forehead, lacerations of the upper lips, cervical sprain, bruises, contusions, and/or abrasions of various portions of the body, including the right arm, right shoulder, neck and back; severe damage to her nerves and nervous system, and various other ills and injuries." Id. at 98.

In deciding that this allegation was insufficient to meet the "serious and permanent" threshold of the act, the Bucks County court required plaintiff to state with specificity which injuries were serious and permanent and why.

"Certainly, the burden of proof would rest on plaintiff so to establish that aspect of his case at the time of trial, and this could be accomplished only by expert testimony from one schooled in medicine,

unless the very nature of the injury made it evident that the injury was serious and permanent, e.g., the loss of a limb.

"If proof is later required, then why should plaintiff not be required to plead not only which injuries are serious and permanent but also the fact that he had been so advised by a physician—if this be the case—rather than to require defendant to proceed with the taking of interrogatories or depositions, or worse yet, to wait until the time of trial to establish that fact?" Id. at 100-101.

Upon this reasoning, the court required plaintiff to allege either that his conclusion of serious and permanent was based upon competent medical advice to be produced at trial, or that, because of the nature of the injury invoked, the seriousness and permanence of the injuries were self-evident. See Scheitrum v. Hosler, 74 Schuyl. 126 (1979).

While we agree that, by their very nature, the injuries alleged by plaintiff in paragraph 10 of the complaint do not appear to be prima facie serious and permanent, nevertheless, we are unable to concur in defendant's position that plaintiffs *must* plead that they have medical testimony, which will be presented at trial, to establish that fact. The thresholds of the No-fault Act require more specific pleading than pleading damages in another type of action. The reason for this is that suit is precluded until certain indicia of seriousness of accident are established: No-fault Act §§102, 103. Despite the need for particularity, however, a plaintiff should not be required to plead *how* he will *prove* his allegations at trial. Instead, pleading with particularity the injuries alleged to be serious and permanent, along with facts to indicate why they are so would

be sufficient. Allegations of competent medical advice, while a good indication of the seriousness and permanence involved, is only one example of such pleading and will not be mandated.

In line with the foregoing, tterefore, we will treat defendant's motion to strike as a motion for a more specific complaint and direct thatplaintiff amend, pleading facts to establish why the injuries alleged are serious and permanent. Paragraph 14 on its face is insufficient and will be stricken with leave to amend.

Defendant's next objection goes to paragraph 15 of the complaint which reads: "15. That as a result of the negligence of the Defendant, the plaintiff may, in the future, sustain a dimunition of his earning potential which would be in excess of the $15,000.00 limit of work loss benefits provided under the Pennsylvania No-Fault Motor Vehicle Insurance Act."

Under section 301(a)(4) of the No-fault Act "[a] person remains liable for loss which is not compensated because of any limitation in accordance with section 202 . . . (b) . . . of this act." Section 202(b) "work loss limits" provides for a maximum recovery from the insurer of $15,000.

Defendant contends that plaintiffs' paragraph 15 "is pure speculation" and therefore should be stricken. We agree and will strike with leave to amend.

In Theal v. Confer, supra, plaintiff alleged lost wages in the amount of $11,250 from the date of accident, June 29, 1976, to January 25, 1977, and that because of his injuries he was required to accept employment at substantially reduced wages upon return to work in February, 1977. In requiring plaintiff to plead over, the court stated at 618, 619:

"It is clear to this court that if actual lost earnings exceed $15,000, plaintiff may maintain an action in tort to recover the amount in excess of said sum. Also, and we so hold that impairment of earning capacity may also be considered together with actual lost earnings in determining whether or not the sum of $15,000 has been exceeded.

• • •

"While plaintiff does specify what he earned per week before the accident and what he earns now, we feel that in order for proper consideration and determination of whether a claim for lost earnings and impairment of earning capacity remains viable in this matter, plaintiff should specifically plead how much he has lost as a result of the alleged reduced earning capacity. We believe such a computation was possible by the date of the filing of the original complaint and should certainly be available presently. We further believe that plaintiff should be more specific in showing how the figure of $11,250 was arrived at."

This court is in agreement with the reasoning of the Theal court. Therefore, we will give plaintiff leave to plead over to state with particularity the amount of work loss sustained, how it was sustained, the period over which it has accumulated, any diminution in earnings flowing from the injuries sustained that may indicate a projected future wage loss, any impairment or reduction of earning capacity resulting from the injuries alleged, and any other facts that will specifically indicate to this court that there is substance to plaintiffs' claim beyond the wording necessary to exceed the threshold requirements of the No-fault Act.

Because we have not decided that plaintiff Jack A. Walk's action is barred by the No-fault Act, we need not discuss the claim of Lynette Walk, his wife, for loss of consortium. We note parenthetically, however, that the recent opinion of the Superior Court in Zagari v. Ctvalka, ____Pa. Superior ____, 399 A. 2d 755 (1979), specifically holds that a spouse's cause of action for loss of consortium has not been abolished by the No-fault Act.

## ORDER

And now, April 30, 1979, plaintiffs are given leave to file an amended complaint within 20 days in accordance with the opinion of court filed this date.